**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DESERT SALON SERVICES, INC., <br><br> Plaintiff(s), <br><br> v. <br><br> KPSS, INC., <br><br> Defendant(s). | 2:12-CV-1886 JCM (CWH) |

**ORDER**

Presently before the court is defendant KPSS, Inc.'s (Kao USA, Inc.) partial motion to dismiss. (Doc. # 5). Plaintiff Desert Salon Services, Inc. responded (doc. # 7), and defendant replied (doc. # 9).

**I.   Factual background**

On January 16, 1991, defendant's predecessor-in-interest, Goldwell Cosmetics (U.S.A.) Inc., ("Goldwell"), entered into a regional buying agreement with plaintiff's predecessor-in-interest, Andrew Muckersie ("Muckersie"). The regional buying agreement granted Muckersie the exclusive right to sell certain hairdressing and skin care products and cosmetics manufactured by Goldwell ("product line") within a specified region. The regional buying agreement was amended to include portions of Nevada in this specified region. On October 31, 2010, the regional buying agreement expired. Upon merger with Goldwell, defendant assumed and became liable for all obligations of Goldwell under the regional buying agreement.

**James C. Mahan**
**U.S. District Judge**

Plaintiff alleges that in June 2006, defendant negotiated with Cadeau Express, Inc. ("Cadeau") to sell the product line directly to Cadeau. However, upon plaintiff's discovery of this relationship, defendant cancelled the transaction. Further, defendant cancelled plaintiff's shipment to Cadeau and refused to ship any products to Cadeau. Plaintiff alleges that by refusing to permit plaintiff to sell the product line to Cadeau and by negotiating directly with Cadeau to sell the product line, defendant intentionally interfered with plaintiff's prospective contractual relations.

Plaintiff alleges that in April 2009, defendant interfered with plaintiff's existing contractual relationship with Euphoria Salons & Day Spas ("Euphoria") by negotiating directly with Euphoria to treat it has a regional chain; and in December 2009, by negotiating directly with Euphoria to treat it as a national chain. Further, on October 6, 2010, defendant sold the product line directly to Euphoria.

Plaintiff also alleges that in March 2009, a Goldwell wholly-owned distributor, Essential Salon Services Inc. ("Essential"), was selling the product line to a salon that was selling the product line on the internet. Plaintiff alleges that defendant, by knowingly allow the sale of its product line on the internet, interfered with plaintiff's existing and prospective business relationships in Nevada.

On October 1, 2012, plaintiff filed a complaint alleging breach of contract, intentional interference with contractual relations, intentional interference with prospective economic advantage, and breach of the implied covenant of good faith and fair dealing; plaintiff also requests punitive damages. Defendant's partial motion to dismiss seeks dismissal of plaintiff's causes of action for intentional interference with contractual relations (claims 3 and 4), intentional interference with prospective economic advantage (claims 2 and 4), and breach of the implied covenant of good faith and fair dealing (claim 5).

**II.    Legal standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual

allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. Id. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 1949.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.* (internal quotations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

. . .

. . .

James C. Mahan
U.S. District Judge

- 3 -

### III. Discussion

#### A. Claims two & four: statute of limitations

To prove intentional interference with contractual relations, "a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 273, 71 P.3d 1264, 1267 (2003). To prove an intentional interference, "the plaintiff must establish that the defendant had a motive to induce breach of the contract with the third party." *Id.* at 1268.

To prove intentional interference with prospective economic advantage, a plaintiff must establish: "(1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." *Wichinsky v. Mosa*, 109 Nev. 84, 85-88, 847 P.2d 727, 729-30 (1993).

Claims for intentional interference with prospective business advantage and contractual relations are subject to the three-year statute of limitations in NRS 11.190(3)©. *Stalk v. Mushkin*, 125 Nev. 21, 22, 199 P.3d 838, 839 (2009).

Defendant argues that plaintiff's second and fourth claims are barred by the statute of limitations. (Doc. # 5). Plaintiff concedes that defendant is not liable for conduct that exceeds the three-year statute of limitations; however, plaintiff argues some of its allegations against defendant are not limited in time. Plaintiff therefore asserts that defendant should be liable for any misconduct committed after October 1, 2009, and on or before October 31, 2010.

While some of plaintiff's allegations in claims two and four do not reference *when* the wrongful conduct occurred, these allegations are closely tied to allegations that reference dates that are beyond the three-year statute of limitations. Thus, to the extent that plaintiff's intentional interference with contractual relations and prospective business advantage causes of actions are

based on events that occurred before October 1, 2009, these causes of action are dismissed with prejudice.

Further, to the extent that plaintiff's intentional interference with contractual relations and prospective business advantage causes of actions are based on events that occurred between October 1, 2009, and October 31, 2010, these are not sufficiently pleaded **"to give fair notice and to enable the opposing party to defend itself effectively."** *Starr*, 652 F.3d at 1216. These allegations are dismissed without prejudice.

### B. Claim five: breach of the implied covenant of good faith and fair dealing

"[A]ll contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *Brochu v. Foote Enterprises, Inc.*, case no. 55963, 2012 WL 5991571, at *5 (Nev. Nov. 29, 2012); *see also Hilton Hotels v. Butch Lewis Productions*, 109 Nev. 1043, 1046, 862 P.2d 1207, 1209 (1993) (stating that the duty of good faith and fair dealing is always imposed on the contracting parties and becomes a part of the contract such that the remedy for the duty's breach is based on the contract).

Where a breach of the implied covenant of good faith and fair dealing is alleged, a plaintiff can make a claim for damages under a contract theory and/or a tort theory. *Hilton Hotels Corp. v. Butch Lewis Productions, Inc.*, 107 Nev. 226, 232–33, 808 P.2d 919, 922–23 (1991). When one party holds "vastly superior bargaining power," Nevada courts have extended tort liability for breach of the implied covenant of good faith and fair dealing. *Insurance Co. of the West v. Gibson Tile*, 122 Nev. 455, 462, 134 P.3d 698, 702 (2006) (quoting *Aluevich v. Harrah's*, 99 Nev. 215, 217, 660 P.2d 986, 986 (1983)). The covenant rises in tort only where there is a special relationship between the victim and tortfeasor "characterized by elements of public interest, adhesion, and fiduciary responsibility." *Id.* at 461, 134 P.3d at 702 (quoting *Great American Ins. v. General Builders*, 113 Nev. 346, 355, 934 P.2d 257, 263 (1997)); *see also Moroni Corporate Investments Int'l, Inc. v. Edgemon*, case no. 57407, 2012 WL 5378151 (Nev. Oct. 31, 2012)**.**

. . .

James C. Mahan
U.S. District Judge

- 5 -

Defendant argues that plaintiff has not alleged a "special relationship" between itself and defendant.[1] Plaintiff argues that its relationship with defendant is akin to that of a franchiser and franchisee, which the Nevada Supreme Court has acknowledged to be a "special relationship." *See Ins. Co. of the W. v. Gibson Tile Co., Inc.*, 122 Nev. 455, 462, 134 P.3d 698, 702 (2006). Plaintiff argues that its exclusive distributorship with defendant is marked by the same elements of public interest, adhesion, and fiduciary responsibility as that of a franchiser and franchisee.

Plaintiff's allegations do not demonstrate a special relationship between plaintiff and defendant. While plaintiff has alleged that defendant engaged in behavior that took advantage of its position in the distributor relationship, as the manufacturer of the product, that alone does not create a special relationship. And even though plaintiff and defendant (and their predecessors) have engaged in business for over 20-years; length of a relationship also does not establish the hallmarks (public interest, adhesion, and fiduciary responsibility) that characterize a special relationship.

Accordingly, plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing is dismissed in tort without prejudice. Defendants did not challenge this cause of action in contract, and thus it is not dismissed in contract.

**C.     Claims two, three, four, and five: economic loss doctrine**

"The economic loss doctrine marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." *Calloway v. City of Reno*, 116 Nev. 250, 256, 993 P.2d 1259, 1263 (2000) (citation omitted), *overruled on other grounds by Olson v. Richard*, 120 Nev. 240, 241–44, 89 P.3d 31, 32–33 (2004). In the words of the United States Supreme Court, the economic loss doctrine exists to prevent contract law from drowning in a "sea of tort." *East River S.S. Corp. v. Transamerica Deleval*, 476 U.S. 858, 866 (1986).

. . .

---

[1] The court notes that plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing *is based in contract* (*see* doc. # 1-1, ¶ 44); however, for completeness, the court addresses the cause of action in tort.

James C. Mahan
U.S. District Judge

- 6 -

In Nevada, the economic loss doctrine bars unintentional tort claims when a plaintiff seeks to recover "purely economic losses." *Calloway*, 116 Nev. at 257 (*citing* American Law of Products Liability (3d. § 60:39, at 69 (1991)); *Terracon Consultants Western, Inc. v. Mandalay Resort Group*, 125 Nev. 66, 73 (2009). Thus, the doctrine provides that certain economic losses are properly remediable only in contract. *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007). Purely economic loss has been defined as "the loss of the benefit of the user's bargain . . . including . . . pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property." *Calloway*, 116 Nev. at 257 (*citing* American Law of Products Liability (3d. § 60:36, at 66)).

As for intentional tort claims, the *Calloway* court did not delineate the entire universe of tort claims that would, or would not, be subject to the economic loss doctrine. Rather, the *Calloway* court found that "the more reasoned method" would be to examine each case "in order to ascertain the proper boundary between the distinct civil law duties that exist separately in contract and tort." 116 Nev. at 261 n.3.

The court finds that the economic loss doctrine is not an outright bar to intentional interference with contract relations or intentional interference with prospective economic advantage. However, plaintiff's alleged damages for lost profits and commissions from existing and prospective business relationships caused by defendant's negotiations to sell the product line directly to Cadeau, selling the product line directly to Euphoria, and permitting re-sale of the product line online by a salon, constitute "purely economic losses" as contemplated by the Nevada Supreme Court in *Calloway*. *See Peri & Sons Farms, Inc. v. Jain Irr., Inc.*, 3:11-CV-00757-VPC, 2013 WL 164089 (D. Nev. Jan. 15, 2013).

Here, plaintiff takes issue with defendant directly negotiating with a third-party, directly selling product to a third–party, and permitting a third-party to sell product into plaintiff's specified region. The nature of the behavior that plaintiff challenges is not, outside of the exclusive distributorship contract, violative of tort law. Further, the recovery plaintiff seeks is limited to the

James C. Mahan
U.S. District Judge

- 7 -

1 damages it suffered as a result of defendant either directly taking profits, failing to pay commissions, or diverting profits away from plaintiff–that is a "purely economic loss." Lastly, plaintiff has alleged and defendant has not moved for dismissal of plaintiff's breach of contract claim, thus plaintiff may seek recovery in contract.

Accordingly, the court finds that the economic loss doctrine bars plaintiff's intentional interference with contract relations cause of action and plaintiff's intentional interference with prospective economic advantage cause of action.

### D. Claims two, three, four, and five: punitive damages

N.R.S. 42.005(1) provides that a litigant may recover punitive damages "in an action for the breach of an obligation not arising from contract" if the litigant can prove by clear and convincing evidence that the defendant engaged in "oppression, fraud or malice, express or implied . . . ." In other words, punitive damages are only available for tort claims in which "oppression, fraud or malice, express or implied" can be proven by clear and convincing evidence.

Punitive damages are not available under Nevada law for contract-based causes of action. *See Rd. & Highway Builders, LLC v. N. Nev. Rebar, Inc.*, 284 P.3d 377, 383 (2012) (citing *Amoroso Const. v. Lazovich and Lazovich*, 107 Nev. 294, 298 (1991) (punitive damages are not available for breach of contract claims); *Frank Briscoe Co., Inc. v. County of Clark*, 643 F.Supp. 93, 99–100 (D. Nev. 1986) (contract-based breach of warranty claim cannot support an award of punitive damages).

The court concludes that plaintiff's tort claims for intentional interference with contractual relations, intentional interference with prospective economic advantage, and breach of the implied covenant of good faith and fair dealing fail as a matter of law. Thus, plaintiff's request for punitive damages also cannot stand.

### IV. Leave to amend

In its opposition to defendant's motion to dismiss, plaintiff requested leave to amend. (Doc # 7, 3:10-12). Under Rule 15(a)(2) leave to amend is to be "freely given when justice so requires." FED. R. CIV. P. 15. In general, amendment should be allowed with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of*

*Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). Absent a showing of an "apparent reason" such as undue delay, bad faith, dilatory motive, prejudice to the defendants, futility of the amendments, or repeated failure to cure deficiencies in the complaint, leave to amend should be granted. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

Accordingly, the court will afford plaintiff an opportunity to amend its complaint. The court reminds plaintiff that if it chooses to amend its complaint, it must comply with the requirements of Local Rule 15-1 and file a motion to amend, attaching the proposed amended complaint. Additionally, if the amended complaint is similarly deficient, the court may conclude that further leave to amend would be futile.

### V. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant KPSS, Inc.'s (Kao USA, Inc.) partial motion to dismiss (doc. # 5) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff, if it chooses to amend its complaint, file the motion to amend, attaching the proposed amended complaint, within thirty (30) days of the date of this order.

DATED February 6, 2013.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**